**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------×
PATRICK CROWLEY,

              *Plaintiff*,                        **19 CV 7571**

      *v*.

                                              **COMPLAINT**
BILLBOARD MAGAZINE *and* PROMETHEUS GLOBAL
MEDIA LLC,

              *Defendants*.
---------------------------------------------------------------------×

Plaintiff Patrick Crowley, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendants Billboard Magazine and Prometheus Global Media LLC (collectively, "Defendants" or "Billboard") as follows:

**PRELIMINARY STATEMENT**

1. In August 2014, Billboard hired Mr. Crowley (a gay man) as a Senior Associate Art Director. In February 2019, Billboard promoted Mr. Crowley to Senior Director, Billboard Pride tasking him with running the social media and overseeing all operations for Billboard Pride. Mr. Crowley was a dedicated employee and a hard worker who only received positive feedback and promotions. In March 2018, an individual named Nic Thakkar[1] began a campaign of self-promotion that involved false allegations of sexual harassment, which he submitted to Buzzfeed. In response, Billboard deliberately ignored the obvious falsity of the claims and instead chose to join the bandwagon to destroy Mr. Crowley's career. Billboard caused libelous articles to be published, in which they call Mr. Crowley's behavior deplorable, unethical, unprofessional, inappropriate, and cited his behavior a "misconduct." Without any legitimate

---

[1] After Mr. Crowley's termination, Nate Hernandez (with the stage name Kisos) joined Mr. Thakkar in hopes of promoting himself. When Mr. Hernandez was finally satisfied with his campaign of self-promotion and false allegations, he boasted via Twitter: "From 40 listeners to 1400 in a month… these surprises I have on the horizon might bring success I can't even fathom now."

1

inquiry or investigation, Billboard summarily terminated Mr. Crowley in under 10 hours, destroying his professional. Several other straight employees however, who faced substantiated and far more serious allegations of sexual harassment, were allowed to keep their jobs. Mr. Crowley was, therefore, treated differently in part because he is gay.

2.    Plaintiff seeks damages and costs against Defendants for discriminating against him based on his sexual orientation by terminating his employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

3.    Plaintiff also seeks damages and costs against Defendant for slander, in violation of New York Common Law.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

4.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under Title VII.

5.    Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

6.    All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Right-to-Sue letter dated July 15, 2019 relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

7.    Plaintiff respectfully requests a trial before a jury.

**PARTIES**

8. Plaintiff, at all times relevant hereto, was and is a resident of Los Angeles County in the State of California.

9. Upon information and belief, at all times relevant hereto, Defendant Billboard Magazine was and is a corporation organized under the laws of the State of New York with its principal place of business located at 340 Madison Ave Suite 6, New York, New York 10173.

10. Upon information and belief, at all times relevant hereto, Defendant Prometheus Global Media LLC was and is a corporation organized under the laws of the State of New York with its principal place of business located at 1540 Broadway 32nd Floor, New York, New York 10036.

**STATEMENT OF FACTS**

11. In August 2014, Billboard hired Mr. Crowley as a Senior Associate Art Director.

12. In July 2018, Billboard promoted Mr. Crowley to the position of Editor, Billboard Pride.

13. In February 2019, Billboard promoted Mr. Crowley to Senior Director, Billboard Pride tasking him with running the social media and overseeing all operations for Billboard Pride.

**I.   Unlawful Termination based on Sexual Orientation**

14. On June 6, 2017, a musician, Nic Thakkar (with the stage name NEO 10Y), reached out to Mr. Crowley via his personal email address to pitch his music video titled, "Echo Chamber."

15. Mr. Crowley carbon copied his work email address to continue the conversation.

16. On June 8, 2017, Mr. Crowley wrote a piece about Mr. Thakkar for Billboard.

17. From the end of 2017 until early 2018, Mr. Thakkar continued to pitch things to Mr. Crowley, which Mr. Crowley did not respond to.

18. In reality, Mr. Crowley was not a fan of Mr. Thakkar's music and had made the professional decision to not further promote Mr. Thakkar.

19. Mr. Thakkar also direct messaged Mr. Crowley on Instagram in an attempt to get a response.

20. On August 30, 2018, Mr. Thakkar messaged Mr. Crowley on Twitter to pitch an upcoming song release.

21. Mr. Crowley did not respond.

22. On September 14, 2018, Mr. Thakkar messaged Mr. Crowley on Instagram and called him "a legend" and the "best journalist music has had in years."

23. In this message, Mr. Thakkar also brought up a product called Bussyboy (a soap used to bleach anuses).

24. On October 9, 2018, Mr. Crowley learned that a Freelance Writer at Billboard, Jon Aliaga, had done a Q&A with Mr. Thakkar without Mr. Crowley's approval.

25. As Mr. Aliaga is a Freelance Writer, he should have received definite approval from Mr. Crowley (who had the final say) before going forward with this piece, which concerned a song of Mr. Thakkar's that Mr. Crowley had yet to listen to.

26. At this time, Mr. Thakkar reached out to Mr. Crowley concerning his upcoming Q&A article, which he did with Mr. Aliaga.

27. During this conversation, Mr. Crowley explained that he was upset at the way Mr. Thakkar and Mr. Aliaga had handled this, without informing Mr. Crowley, who and felt taken advantage of and now had to do immense work on this project.

28. In response, Mr. Thakkar expressed how adamant he was that this being Q&A article be published on October 10, saying how he "planned this date for almost six weeks."

29. Mr. Thakkar assured Mr. Crowley that he did not intend to go behind his back to get this article published and that he thought Mr. Aliaga and Mr. Crowley were in constant communication.

30. Mr. Thakkar also told Mr. Crowley that Mr. Crowley would have exclusive "assets," meaning Mr. Thakkar wouldn't provide information for other publications.

31. Mr. Crowley edited the article Mr. Aliaga had drafted and submitted it to a Billboard Copy Editor and then sent Mr. Thakkar a link to the article.

32. After this, Mr. Crowley began a friendly exchange with Mr. Thakkar, opening up to him by making friendly and self-deprecating humor about his looks ("I'm a potato with bad stubble") and how he needs someone to date.

33. In response, Mr. Thakkar repeatedly told Mr. Crowley, "I love you so much," and expressed how much Mr. Crowley meant to him.

34. Mr. Crowley also confided in Mr. Thakkar that he had been taken advantage of numerous times because of his position at Billboard.

35. Although Mr. Crowley approved the edited version of Mr. Aliaga's Q&A and had engaged in friendly banter with Mr. Thakkar, he maintained a professional dislike for Mr. Thakkar's music.

36. On October 10, the Billboard article ("NEO 10Y Talks Dual Music Video Release & Being Open About His Sexuality: 'The World Is Becoming Queerer'") went live—as did, surprisingly, articles with two other outlets, Attitude and Gay Times.

37. Mr. Crowley was shocked and angry to learn about these additional articles, as Mr. Thakkar had specifically promised Billboard would have "exclusive assets" in his October 9, 2018 conversation with Mr. Crowley.

38. Moreover, it is generally understood that independent artists do not forgo exclusivity agreements or have premiers at multiple outlets concurrently.

39. Mr. Crowley expressed his frustration to Mr. Thakkar, saying "I wasn't happy to see that you had lined up three interviews for the same day – while it's amazing for you, it meant our audience was divided by three as far as what they were clicking on and it underperformed drastically, so I got yelled at for something I didn't plan on doing in the first place."

40. In response, Mr. Thakkar wrote an email apologizing to Mr. Crowley and messaged him on Instagram to ensure he received his apology.

41. On October 29, 2018, Mr. Aliaga emailed Mr. Crowley his selections for the monthly playlist he curates for Billboard.

42. Mr. Crowley asked Mr. Aliaga to remove one of Mr. Thakkar's song from this playlist (among other songs).

43. In December 2018, Mr. Thakkar reached out to Mr. Crowley via email yet again, apologizing and questioning why he was left off Mr. Crowley's year-end coverage.

44. Mr. Crowley did not respond: He did not want to work with Mr. Thakkar again and thought it unprofessional that Mr. Thakkar had the audacity to say he deserved a spot on the "best songs of 2018" list.

45. In February 2019, Billboard promoted Mr. Crowley to Senior Director, Billboard Pride.

46. On March 14, 2019, Buzzfeed emailed Mr. Crowley on his work email, requesting a "right of reply" (i.e., asking Mr. Crowley if he had a comment for an upcoming Buzzfeed article).

47. At this time, Mr. Crowley learned that around the first week of March, Mr. Thakkar went to Buzzfeed with a story, alleging that Mr. Crowley had sexually harassed him.

48. All of the alleged claims were entirely false and unsubstantiated.

49. Mr. Crowley immediately forwarded this email to Denise Warner, Mr. Crowley's immediate supervisor and the Executive Editor, Digital.

50. Afterwards, Mr. Crowley and Ms. Warner talked to Billboard's Attorney, Michele Singer.

51. Ms. Singer called Mr. Crowley twice, the second time with outside counsel present.[2]

52. Ms. Singer began speaking with Mr. Crowley about the allegations over the phone.

53. Mr. Crowley sat at a cubicle in an open and high-traffic area in the office and, as such, asked Ms. Singer if they could speak about these allegations more privately and in person.[3]

54. Once inside Ms. Singer's office, Billboard's outside counsel expressed amusement at the allegations Mr. Thakkar was bringing against Mr. Crowley.

---

[2] The first time she called him, in fact, Ms. Singer laughed at the situation, expressing how unconvincing she found Mr. Thakkar's claims to be.

[3] In fact, throughout the day, Billboard conducted its investigation unethically: Billboard employees from the human resources and legal departments spoke to Mr. Crowley over the phone, in crowded places, and with their doors open, providing no privacy or confidentiality whatsoever.

55. In fact, outside counsel joked that "if this was [Mr. Crowley's way of flirting, he] needed to work on that."

56. In sum, the attorneys Mr. Crowley met with said that these messages were an invasion of privacy and that Buzzfeed "didn't have much to work with."

57. Mr. Crowley also spoke with Alexis Capra, Vice President of Human Resources at Valence Media (the parent company of Billboard), and assured her that he would cooperate fully with any investigation Billboard conducted concerning these allegations.

58. Ms. Capra even complimented Mr. Crowley for being so cooperative.

59. Yet, around 8:30 p.m. on March 14, 2019—the very day Mr. Crowley made Billboard aware of the false allegations against him and after an incredibly brief investigation (which lasted less than 12 hours)—Billboard terminated his employment, claiming that Mr. Crowley's actions did not meet the company code of ethics.

60. Upon information and belief, however, there is no "code of ethics" and none was referenced to Mr. Crowley.[4]

61. Billboard's treatment of Mr. Crowley was a complete aberration from the way Billboard managed other similar situations involving its straight employees.

62. For example, other straight male employees were accused of sexual harassment by female Billboard employees.

63. A former Billboard employee complained about Julian Holguin, a straight man and Billboard's Executive Vice President for Partnerships, for his sexually inappropriate behavior, including, but not limited to, repeatedly asking employees about whether they could attend a strip club and asking whether the strippers would sleep with him.

---

[4] In fact, that very day Billboard was conducting an ethics training meeting, which Mr. Crowley attended. In this meeting, nothing like a company code of ethics was addressed or mentioned.

64. Billboard conducted a thorough and lengthy investigation of these allegations, after which it determined that the allegations had "no merit."

65. Moreover, Mr. Holguin had to change locations in the office because at least one female employee felt uncomfortable sitting next to him.

66. Another Billboard employee, John Amato, was under investigation for three months after sexual harassment allegations against him surfaced.

67. Billboard even hired an additional outside human resources consultant to investigate Mr. Amato's conduct.

68. Investigators quickly learned about a widely witnessed event in which Mr. Amato made sexual remarks to a young female marketing employee and that Mr. Amato had a history of being sexually inappropriate with younger female workers.

69. Mr. Amato also had regular explicit conversations about his sex life.

70. Billboard ultimately fired Mr. Amato.

71. Female employees also complained about Jared Stone, a straight man and the Head of Analytics and Audience Insights, for being sexually inappropriate.

72. For example, Mr. Stone suggested a team-building outing to the Museum of Sex and offered to give his subordinate, Kelsey Weekman, sex advice ahead of her honeymoon.

73. Ms. Weekman complained about Mr. Stone and, in response, Billboard moved her desk, so she would not have to sit near him.

74. Moreover, according to Ms. Weekman, many people on the Analytics Team complained to human resources about Mr. Stone.

75. Billboard told them to stop.

76. In January, almost the entire Analytics Team was laid off with the exception of Mr. Stone.

77. These incidences of sexual harassment at Billboard have received wide-spread attention from major news outlets, including the Daily Beast and The New York Times.

78. Billboard conducted much more thorough investigations into the conduct of these straight employees, which substantiated many, if not all, of the victims' claims. [5]

79. Furthermore, Billboard did not release antagonizing press statements or Letters from the Editor for these straight male employees, yet they released multiple antagonizing press statements and *A Letter From The Editor* for Mr. Crowley.

80. In fact, Billboard released no press statements for Julian Holguin and Jared Stone at all, despite the accusations of them sexually harassing employees.

81. Billboard, however, released a press statement for John Amato, in which they chose to ignore the accusations of sexual harassment against him and instead, informed readers that he was simply stepping down from his position.

82. Billboard then covered up claims of his sexual harassment accusations by reasoning that his departure was related to a change in the company's organization.

83. In a Billboard article titled, "Hollywood Reporter - Billboard Group CEO Steps Down," Billboard stated:

> "Amato's departure follows a Feb. 1 reorganization at the parent company of The Hollywood Reporter and Billboard brands, which are now organized under Valence Media, an umbrella group that also includes production companies Media

---

[5] If Billboard had investigated these accusations thoroughly, they would have discovered that these men manipulated messages by posting screenshots of conversations out of context on social media. One went as far as to delete a significant amount of his nearly year-long ongoing conversation with Crowley. None of the accusers had ever expressed that Crowley had made them uncomfortable and they continued to engage in friendly banter after the interactions they suddenly deemed inappropriate when they saw there was an opportunity for free publicity at Crowley's expense. Billboard only encouraged this behavior and fanned the flames by releasing multiple press statements.

Rights Capital and dick clark productions and an investment in independent film studio A24."

84. In fact, it was even rumored throughout social media publications that Mr. Amato received an $18 million payout for his departure.

85. Throughout his employment, Mr. Crowley was a dedicated employee who consistently fulfilled his job responsibilities and was never given any negative performance reviews, verbal or oral warnings, write-ups, or anything of the like.

86. In fact, over the course of his employment, Billboard promoted Mr. Crowley on four occasions.

87. With claims that could not be verified as factual, Billboard felt "comfortable with their decision to terminate his employment."

88. In reality, Billboard terminated Mr. Crowley because of its disparate treatment of gay individuals, maintaining the status quo with straight male employees accused of misconduct and terminating the accused gay employee.

89. This is prima facie discrimination based on sexual orientation.

90. Although Billboard claims that Mr. Crowley purportedly violated its ethics policy, neither Mr. Crowley nor any other Billboard employees were aware of any ethics or social media policy.

91. In fact, after his termination, employees, including a high-ranking Senior Editor at Billboard, indicated that they were concerned about Billboard's lack of social media policy.

**II.    Defamation**

92. Furthermore, Billboard continued its homophobic attack and campaign of discrimination against Mr. Crowley by responding to Buzzfeed with a damning quote, which

gave false validation to the accusations, thereby further tarnishing Mr. Crowley's reputation, in addition to revealing other false and private information.

93. After his termination, Billboard released a press statement in BuzzFeed and posted two articles about Mr. Crowley.

94. On March 19, 2019, Buzzfeed posted an article on Mr. Crowley, in which Billboard released a blanketed statement that accused Mr. Crowley of blacklisting his accusers and behaving unprofessionally:

> [A] Spokesperson for Billboard said, "Like any responsible news organization, Billboard regards the idea of blacklisting as repugnant. It never has and never would blacklist anyone. We thank you for bringing this issue to our attention and we regret the unprofessional behavior, which does not reflect our company's standards."

95. Anyone reading the article who is familiar with Mr. Crowley would instantly know to whom the article referred.

96. Billboard also accused Mr. Crowley of deplorable and unethical behavior.

97. On March 21, Billboard published an article in which it wrote:

> "In recent days, additional allegations of inappropriate behavior have surfaced regarding a recently dismissed member of the Billboard staff. We want to reiterate that the kind of behavior described is not only deplorable but also completely contrary to our ethical and professional standards. In the aftermath of these disturbing allegations, we would like to urge anyone with knowledge of similar misconduct to please come forward and share with us what they know: You can email us at hotline.valencemediagroup.com or leave a message anonymously at 1-800-461-9330. Billboard expects all its journalists and employees to uphold the highest standards of professional and ethical behavior, and we will not tolerate anything less."

98. Again, anyone reading the article who is familiar with Mr. Crowley would instantly know to whom the article referred.

99. On March 26, Billboard published yet another article, titled "Billboard Responds to Accusations of Defamation, Discrimination by Former Editor."

100. Billboard furthered the smear campaign against Mr. Crowley by stating:

12

"The accusations of defamation and anti-gay discrimination brought against Billboard by Patrick Crowley's lawyers are baseless. After reviewing the evidence of Mr. Crowley's misconduct, we remain completely comfortable with our decision to terminate his employment. Moreover, after being made aware of additional allegations of inappropriate behavior on his part, we once again would like to urge anyone with knowledge of similar misconduct to let us know about it, either via email at hotline.valencemediagroup.com or anonymously by phone at 1-800-461-9330. As an unequivocal supporter of the community of artists, Billboard condemns the effort by Mr. Crowley's lawyers to intimidate his alleged victims into silence and we pledge to assist them in any way we can."

101. On March 21, 2019 Billboard published an article in which it wrote:

"In recent days, additional allegations of inappropriate behavior have surfaced regarding a recently dismissed member of the *Billboard* staff. We want to reiterate that the kind of behavior described is not only deplorable but also completely contrary to our ethical and professional standards. In the aftermath of these disturbing allegations, we would like to urge anyone with knowledge of similar misconduct to please come forward and share with us what they know: You can email us at hotline.valencemediagroup.com or leave a message anonymously at 1-800-461-9330. *Billboard* expects all its journalists and employees to uphold the highest standards of professional and ethical behavior, and we will not tolerate anything less."

102. Again, anyone reading the article who is familiar with Mr. Crowley would instantly know to whom the article referred.

103. On March 26, 2019, Billboard published yet another article, titled "Billboard Responds to Accusations of Defamation, Discrimination by Former Editor."

104. Billboard furthered the smear campaign against Mr. Crowley by stating:

"The accusations of defamation and anti-gay discrimination brought against Billboard by Patrick Crowley's lawyers are baseless. After reviewing the evidence of Mr. Crowley's misconduct, we remain completely comfortable with our decision to terminate his employment. Moreover, after being made aware of additional allegations of inappropriate behavior on his part, we once again would like to urge anyone with knowledge of similar misconduct to let us know about it, either via email at hotline.valencemediagroup.com or anonymously by phone at 1-800-461-9330. As an unequivocal supporter of the community of artists, Billboard condemns the effort by Mr. Crowley's lawyers to intimidate his alleged victims into silence and we pledge to assist them in any way we can."

105. Billboard's defamation of Mr. Crowley, however, did not end there.

106. In *A Letter From The Editor* in its March issue of Billboard Magazine, Billboard referred to Mr. Crowley again, accusing him of inappropriate conduct, making others feel uncomfortable, and victimizing others.

107. In this letter, dated March 30, 2019, Hannah Karp, an Editorial Director at Billboard, wrote:

> "This month, we at Billboard were devastated to learn that one of our editors had violated our professional standards by sending inappropriate messages to an artist. Although we immediately investigated and subsequently terminated the employee for inappropriate conduct, seven others subsequently came forward to bring further awareness to this matter. As the new editorial director of Billboard, I want to extend a heartfelt apology to anyone who was made to feel uncomfortable or victimized by a representative of our company."

108. Humiliating Mr. Crowley further, Billboard disclosed his identity to readers who were not familiar with him, by stating, "The editor in this case oversaw our Pride vertical."

109. Mr. Crowley was one of a few Billboard employees accused of misconduct, but is the only employee to have faced public humiliation and destruction of his reputation in the form of antagonizing articles published by Billboard.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Unlawful termination based on sexual orientation in Violation of Title VII**

110. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 109 with the same force as though separately alleged herein.

111. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of sex.

112. Defendants discriminated against Plaintiff on the basis of sex by terminating employment based on his sexual orientation.

113. As such, Defendants have violated Title VII.

114. As a direct and proximate consequence of Defendants' sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

115. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### SECOND CAUSE OF ACTION
### Unlawful termination based on sexual orientation in violation of NYCHRL

116. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 115 with the same force as though separately alleged herein.

117. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of sexual orientation.

118. Defendants violated the NYCHRL when they terminated Plaintiff's employment based on his sexual orientation.

119. As a direct and proximate consequence of Defendants' sexual orientation discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

120. Defendants' discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## THIRD CAUSE OF ACTION
### Defamation in violation of New York common law

121.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 120 with the same force as though separately alleged herein.

122.    Defendants made false and defamatory statements of facts regarding Plaintiff, namely, that artists were victims and that he sexually harassed artists he was working with.

123.    Defendants' statements were made with malicious intent and have resulted in injury to Plaintiff by damaging his reputation and business relationships.

124.    As a result of Defendants' slander, Plaintiff has suffered substantial damages, including economic damages and statutory damages, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, economic loss, emotional distress damages, punitive damages, and any other damages to be determined at trial;

B. For the second cause of action, economic loss, emotional distress damages, punitive damages, and any other damages to be determined at trial;

C. For the third cause of action, economic loss, statutory damages, and any other damages to be determined at trial; and

D. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 13, 2019

By:  /s Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
381 Park Avenue South, Suite 1220
New York, NY 10016
T: (212) 425-2600
E: wharman@theharmanfirm.com
E: erivera@theharmanfirm.com

*Attorneys for Plaintiff*