UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

PATRICK CROWLEY,

                           Plaintiff,          **19-cv-7571 (JGK)**

                                               <u>OPINION AND ORDER</u>

          - against -

BILLBOARD MAGAZINE and
MRC MEDIA HOLDINGS, LLC,

                           Defendants.

────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Patrick Crowley, brought this action against
the defendants Billboard Magazine ("Billboard") and MRC Media
Holdings, LLC ("MRC") (collectively, the "defendants"), alleging
employment discrimination in violation of federal, state, and
local statutes. The plaintiff also claims that the defendants
defamed him.

     MRC moves for summary judgment pursuant to Federal Rule of
Civil Procedure 56 dismissing all the of plaintiff's claims
against MRC. For the following reasons, MRC's motion for summary
judgment is **granted.** Additionally, summary judgment dismissing
the plaintiff's claims against Billboard is <u>sua sponte</u> **granted.**

                              **I.**

     The following facts are based on the parties' Local Civil
Rule 56.1 statements and supporting papers and are undisputed
unless otherwise noted.

1

On August 20, 2014, the plaintiff commenced his at-will employment with Billboard as an Associate Art Director in Billboard's New York office.[1] MRC's Reply to Pl.'s Rule 56.1 Counterstatement ¶ 2 ("56.1 Reply"). The plaintiff was openly gay while he was employed by Billboard. Id. ¶¶ 3-4.

The plaintiff was promoted to Deputy Art Director on February 29, 2016. Id. ¶ 5. In the Spring of 2017, the plaintiff started a "vertical" for Billboard's website entitled "Billboard Pride," which publishes online news that caters to an LGBT audience. Id. ¶¶ 6-7. The plaintiff led Billboard Pride from its inception and was promoted to Editor of the vertical in 2018. Id. ¶¶ 8-9. As a result of his promotion to Editor, the plaintiff became a member of Billboard's editorial team and reported to Denise Warner, Billboard's then-Editorial Director. Id. ¶ 10. Warner did not make any negative comments about the plaintiff's sexual orientation while the plaintiff was employed by Billboard. Id. ¶ 11.

The plaintiff was promoted to Senior Director of Billboard Pride in February 2019. MRC contends that Deanna Brown, President of MRC Data, Media, and Information, alone made the decision to promote the plaintiff. Id. ¶ 12. Brown is gay and

---

[1] The legal relationship between Billboard and MRC is not addressed in the parties' Local Civil Rule 56.1 statements. In its answer to the plaintiff's Second Amended Complaint, MRC contended that Billboard "is not an entity susceptible to legal process" and is the "widely recognized trade name of an industry publication distributed by" MRC. ECF No. 37 at 1 n.1.

knew at all relevant times that the plaintiff is gay. Id. ¶ 13.
The plaintiff disputes that Brown was the sole decision-maker
with respect to the plaintiff's promotion and contends that
Warner and Hannah Karp, Editorial Director of Billboard, were
also involved in the promotion decision. Crowley Tr. 245:13-25.

On October 9, 2018, the plaintiff learned that a freelance
writer had drafted an article for publication in Billboard Pride
featuring the musical artist NEO 10Y. 56.1 Reply ¶ 14. The
plaintiff was familiar with NEO 10Y prior to October 2018 and
had previously interviewed and written an article about the
artist. Id. ¶ 15.

Beginning in the evening of October 9, 2018, through the
early morning of October 10, 2018, the plaintiff and NEO 10Y
exchanged direct messages on Instagram. Id. ¶ 16. The plaintiff
initially messaged NEO 10Y about the forthcoming Billboard Pride
article and the fact that the plaintiff was working into the
early morning to finalize the article for publication. Id. ¶¶
17-23. Sometime after 3:50 a.m. on October 10, 2018, the
plaintiff complained to NEO 10Y that the plaintiff was unable to
fall asleep. Id. When NEO 10Y suggested that the plaintiff put
on music to help him fall asleep, the plaintiff responded:
"[m]aybe lol[.] Or porn."[2] Id. ¶ 25. The plaintiff then proceeded

---

[2] Unless otherwise noted, this Opinion and Order omits all alterations,
omissions, emphasis, quotation marks, and citations in quoted text.

to send NEO 10Y several sexually charged messages in which the plaintiff expressed his desire to receive nude photographs. See, e.g., 56.1 Reply ¶¶ 29-46.

Billboard Pride ultimately published the article about NEO 10Y on October 10, 2018. Id. ¶ 47. On October 29, 2018, the plaintiff was sent a proposal of songs to include in the November 2018 edition of a monthly music playlist curated by Billboard Pride. Id. ¶ 48. The proposed playlist included music from NEO 10Y. Id. The plaintiff cut NEO 10Y's music from the playlist before it was published. Id. ¶ 50. Although NEO 10Y's music was excluded from the November 2018 playlist, the parties agree that neither the plaintiff nor anyone else at Billboard ever "blacklisted" NEO 10Y. Id. ¶ 51-52.

On March 14, 2019, Patrick Strudwick, an editor at BuzzFeed News ("BuzzFeed"), sent the plaintiff an email informing the plaintiff that BuzzFeed was preparing a story about "a conversation that is alleged to have taken place between" the plaintiff and NEO 10Y. Id. ¶ 54. Strudwick wrote in relevant part that "it is alleged that [] On 9th October 2018, you attempted to elicit naked photographs of [NEO 10Y]" and "repeatedly invoked the notion of naked pictures." Id. ¶¶ 57-58. Strudwick informed the plaintiff that NEO 10Y believed that the plaintiff's messages constituted "sexual harassment." Id. Strudwick further wrote that NEO 10Y believed that his removal

4

from the November 2018 Billboard Pride playlist "was in fact punishment for not sending nudes, and that he has thus been blacklisted from Billboard." Id. ¶ 59.

The same day that the plaintiff received Strudwick's email, the plaintiff discussed the forthcoming BuzzFeed article and his October 2018 messages to NEO 10Y with Warner and Michele Singer, General Counsel for MRC. Id. ¶ 62. The plaintiff then emailed his messages with NEO 10Y to Singer. Id. ¶ 64. Prior to March 14, 2019, no one at Billboard besides the plaintiff had seen the plaintiff's messages with NEO 10Y. Id. ¶ 65.

Singer then met with Brown and Alexis Capra, Vice President of Human Resources for MRC. Id. ¶ 66. Brown directed Billboard's Human Resources Department to investigate the matter. Id. ¶ 67. Capra reviewed the materials that the plaintiff had provided to Singer, including the Instagram messages. Id. ¶ 69. Capra met with the plaintiff and discussed the plaintiff's communications with NEO 10Y. Id. ¶ 70. Brown also reviewed the plaintiff's Instagram messages to NEO 10Y and found them to be "unethical and inappropriate". Id. ¶¶ 72-73.

On the evening of March 14, 2019, Capra informed the plaintiff that his employment was being terminated because his behavior was not in line with the standards expected of Billboard employees. Id. ¶ 77. MRC contends that Brown alone made the decision to terminate the plaintiff. Id. ¶ 71. The

5

plaintiff disputes this and contends that others at Billboard were also involved in the termination decision. Id. No one at Billboard, including Brown and Capra, made any statements related to the plaintiff's sexual orientation in connection with the plaintiff's termination. Id. ¶ 78.

Following his termination, the plaintiff's former responsibilities were assumed by two individuals: Stephen Daw and Alexis Fish. Id. ¶ 79. Daw is a gay man and Fish is a lesbian woman. Id. ¶¶ 80-81.

On March 19, 2019, BuzzFeed published an article entitled "These Instagram Messages Led To A Billboard Magazine Editor Being Accused of Sexual Harassment" (the "BuzzFeed Article"). Id. ¶ 83. The BuzzFeed Article included quotes from the plaintiff's Instagram messages with NEO 10Y, along with NEO 10Y's allegations that the plaintiff had sexually harassed and blacklisted him. Id. ¶¶ 84-88.

The defendants provided a statement to BuzzFeed regarding the allegations in the BuzzFeed Article. Certain excerpts from that statement were included in the BuzzFeed Article as follows:

> [A] spokesperson for Billboard said the company has investigated the "very serious allegations and determined there had been violations of the company's ethical and professional standards." The spokesperson added, "As a result, we have terminated Patrick Crowley's employment, effective immediately."
> . . .
> A spokesperson told BuzzFeed News: "Like any responsible news organization, Billboard regards the idea of

6

blacklisting as repugnant. It never has and never would blacklist anyone. We thank you for bringing this issue to our attention and we regret the unprofessional behavior, which does not reflect our company's standards."

Id. ¶ 90 (the "Statement to BuzzFeed").

On March 19, 2019, the same day that the BuzzFeed Article was published, NEO 10Y made the following public post on Twitter:

After much deliberation and anxiety, I have come forward with an instance of unprofessional treatment by a senior director at Billboard; where he repeatedly solicited nudes from me, and subsequently started to "punish" / "ground" NEO 10Y as an artist.

Id. ¶ 96. Thereafter, seven men also publicly posted messages on Twitter regarding allegations of sexually inappropriate behavior by the plaintiff. Id. ¶¶ 98, 100, 102-03, 105, 107, 109-10, 112.

On March 21, 2019, Billboard published a statement on its website entitled "Billboard Pride: A Message on Our Professional and Ethical Standards:"

In recent days, additional allegations of inappropriate behavior have surfaced regarding a recently dismissed member of the Billboard staff. We want to reiterate that the kind of behavior described is not only deplorable but also completely contrary to our ethical and professional standards.

In the aftermath of these disturbing allegations, we would like to urge anyone with knowledge of similar misconduct to please come forward and share with us what they know: You can email us at [email] or leave a message anonymously at [phone number].

> Billboard expects all its journalists and employees to uphold the highest standards of professional and ethical behavior, and we will not tolerate anything less.

Id. ¶ 116 (the "March 21 Statement").

Sometime thereafter, Billboard published a "letter from the editor" that was authored by Karp and stated in relevant part:

> This month, we at Billboard were devastated to learn that one of our editors had violated our professional standards by sending inappropriate messages to an artist. Although we immediately investigated and subsequently terminated the employee for inappropriate conduct, seven others subsequently came forward to bring further awareness to this matter.
>
> As the new editorial director of Billboard, I want to extend a heartfelt apology to anyone who was made to feel uncomfortable or was victimized by a representative of our company. We take such behavior extremely seriously and deeply appreciate the emerging-artist community alerting us to it, a courageous move for a particularly vulnerable group . . .

Id. ¶ 131 (the "Letter from the Editor").

## II.

### A.

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's

task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are any genuine
issues of material fact to be tried, not to deciding them. Its
duty, in short, is confined at this point to issue-finding; it
does not extend to issue-resolution." Id. at 1224. The moving
party bears the initial burden of "informing the district court
of the basis for its motion" and identifying the matter or
matters that "it believes demonstrate the absence of a genuine
issue of material fact." Celotex, 477 U.S. at 323. The
substantive law governing the case will identify those facts
which are material, and "[o]nly disputes over facts that might
affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary
judgment is improper if there is any evidence in the record from
any source from which a reasonable inference could be drawn in
favor of the nonmoving party. See Chambers v. TRM Copy Ctrs.
Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets
its burden, the nonmoving party must produce evidence in the
record and "may not rely simply on conclusory statements or on

9

contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998).

**B.**

The plaintiff alleges that the defendants' termination of him in March 2019 constituted sexual orientation discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[3] MRC moves for summary judgment dismissing these claims.

Discrimination on the basis of sexual orientation is prohibited under federal, state, and city law. See Bostock v. Clayton County, 140 S. Ct. 1731, 1754 (2020) (Title VII); Kraiem v. JonesTrading Institutional Servs. LLC, 492 F. Supp. 3d 184, 195 (S.D.N.Y. 2020) (NYSHRL); Viruet v. Citizen Advice Bureau, No. 01-cv-4594, 2002 WL 1880731, at *14 (S.D.N.Y. Aug. 15, 2002) (NYCHRL).

---

[3] In his brief in opposition to MRC's motion for summary judgment, the plaintiff argues that he also is asserting claims of gender discrimination. See ECF No. 80 at 10 (the "Opposition" or "Opp'n"). However, the plaintiff did not plead any claim for gender discrimination in his complaint. See ECF No. 33 ("Second Amended Complaint" or "SAC") at 14-15 (asserting causes of action for unlawful termination "based on sexual orientation"). Accordingly, there is no claim for gender discrimination in this case. See Mediavilla v. City of New York, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment.").

The plaintiff's Title VII and NYSHRL claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012). To establish a prima facie claim of discrimination, the plaintiff "must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Id. "If a plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination." Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001). "If the defendant fails to discharge the burden by presenting a nondiscriminatory reason, the plaintiff will prevail (assuming the other aspects of the prima facie case are not contested)." Id. "If the defendant bears its burden of production, the presumption drops out of the analysis [] and the defendant will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." Id.

The plaintiff's NYCHRL claim must "be analyzed both under the McDonnell Douglas framework and the somewhat different

'mixed-motive' framework." <u>Melman v. Montefiore Med. Ctr.</u>, 946 N.Y.S.2d 27, 30 (App. Div. 2012). The core inquiry under the NYCHRL is whether the plaintiff can "show that her employer treated her less well, at least in part of a discriminatory reason. The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of that discrimination played no role in its actions." <u>Mihalik v. Credit Agricole Cheuvreux North America, Inc.</u>, 715 F.3d 102, 110 n.8 (2d Cir. 2013); <u>see also</u> <u>Melman</u>, 946 N.Y.S.2d at 41 (explaining that an employer is entitled to summary judgment on an NYCHRL claim if the "plaintiff has failed to come forward with any evidence—direct or circumstantial—from which it could rationally be inferred that [illegal] discrimination was a motivating factor, even in in part, for [the employer's] treatment of [the plaintiff].").

MRC contends that the plaintiff's discrimination claims are without merit because there is no evidence to support an inference that discrimination played any role in the decision to terminate the plaintiff. MRC also argues that the defendants had legitimate, non-discriminatory reasons to discharge the plaintiff and that the plaintiff cannot demonstrate that the

defendants' stated reasons for terminating the plaintiff were
pretextual.

### 1.

MRC argues that the plaintiff cannot establish a prima
facie case of discrimination because (1) Brown was involved in
the decisions to promote and terminate the plaintiff; (2) the
plaintiff's job responsibilities were assumed by members of the
same protected class as the plaintiff; (3) there is no evidence
that the plaintiff was subject to disparate treatment; and (4)
no relevant actor at Billboard or MRC made any discriminatory
remarks to the plaintiff. The plaintiff disputes MRC's
characterization of the evidence and contends that an inference
of discrimination arises because (1) the plaintiff was treated
less well than similarly situated heterosexual employees; (2)
the plaintiff's termination was not conducted in accordance with
established procedures; and (3) Brown made a remark about the
plaintiff's sexual orientation before the plaintiff was
terminated.

First, it is undisputed Brown participated in the decisions
both to promote the plaintiff in February 2019 and to terminate
him in March 2019.[4] An inference against discrimination arises

---

[4] MRC contends that the undisputed evidence demonstrates that Brown alone made
the decisions to promote the plaintiff in February 2019 and to terminate him
in March 2019. However, the plaintiff testified that Warner and Karp were
also involved in the decision to promote him, Crowley Tr. 245:13-25, and
there is other testimony in the record that suggests that Brown may not have

where the same actor or actors were responsible for decisions to promote and then to terminate a plaintiff within a short time span. Cordell v. Verizon Commc'ns, Inc., 331 F. App'x 56, 58 (2d Cir. 2009). Such an inference arises here given Brown's undisputed involvement in the decisions to promote and terminate the plaintiff. See Whitting v. Locust Valley Cent. Sch. Dist., No. 10-cv-742, 2012 WL 5289617, at *12 (E.D.N.Y. Oct. 22, 2012) (the plaintiff failed to establish prima facie case where the same actor was among those who participated in the decisions to hire and then deny tenure to the plaintiff); see also Jones v. Yonkers Pub. Sch., 326 F. Supp. 2d 536, 546 (S.D.N.Y. 2004) (the so-called "same actor" inference "may be applied even when the supervisor at issue . . . is not the only person with input into the hiring and firing decision."). Additionally, the fact that Brown participated in these decisions and belongs to the same protected class as the plaintiff creates a further inference against discrimination. See, e.g., James v. Mun. Credit Union, No. 13-cv-4568, 2016 WL 698136, at *5 (S.D.N.Y. Feb. 19, 2016) ("[A] well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class.").

---

made the decision to terminate the plaintiff completely on her own. See, e.g., Capra Tr. 40:23-25, 56:3-12. In any event, disputes about whether Brown made these decisions alone or in tandem with others are not material because it is undisputed that Brown participated in both decisions.

It is also undisputed that after the plaintiff's termination, the plaintiff's job responsibilities and duties were assumed by two individuals who were members of the same protected class as the plaintiff. This fact "weighs heavily against the inference that [the plaintiff] suffered discrimination." Montanile v. Nat'l Broadcasting Co., 211 F. Supp. 2d 481, 487 (S.D.N.Y. 2002), aff'd, 57 F. App'x 27 (2d Cir. 2003); see also Inguanzo v. Hous. & Servs., Inc., No. 12-cv-8212, 2014 WL 4678254, at *19 (S.D.N.Y. Sept. 19, 2014), aff'd, 621 F. App'x 91 (2d Cir. 2015) ("Where a member of the plaintiff's protected class is contemporaneously hired as a replacement, the offering of proof of intentional discrimination appears extremely difficult, if not practically impossible.").

Furthermore, there is no evidence that that MRC treated the plaintiff "less favorably than a similarly situated employee outside his protected group." See Fahrenkurg v. Verizon Servs. Corp., 652 F. App'x 54, 56 (2d Cir. 2016). In order to make such a showing, the plaintiff must point to evidence that (1) the plaintiff and those he maintains were similarly situated were subject to the same workplace standards; and (2) the conduct for which the employer imposed discipline was of comparable seriousness. Debidat v. Marriott Int'l, Inc., 580 F. Supp. 2d 300, 306 (S.D.N.Y. 2008) (citing Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)); see also Lizardo v. Denny's Inc.,

270 F.3d 94, 101 (2d Cir. 2001) (while the circumstances relating to the plaintiff and to the comparator "need not be identical, [] there should be a reasonably close resemblance of facts and circumstances."). Whether employees are similarly situated may be resolved on a motion for summary judgment if no reasonable jury could find the plaintiff and the comparator to be similarly situated in all material respects. Fahrenkurg, 652 F. App'x at 56-57.

The plaintiff concedes that he is not aware of any heterosexual man at Billboard or MRC who was accused of sending sexual messages to an artist whom he was covering. 56.1 Reply ¶ 82. However, the plaintiff contends that two heterosexual male Billboard employees, Julian Holguin and Jared Stone, were not terminated by Billboard after having engaged in conduct that was similarly serious to the plaintiff's behavior. The plaintiff argues that this constitutes disparate treatment and raises an inference of discrimination.

The plaintiff testified that Holguin, who was the Director of Sales at Billboard, was accused of making inappropriate remarks during a work meeting. Crowley Tr. 61:13-62:9. The plaintiff also testified that Stone, a department head at Billboard, made inappropriate comments to a female subordinate. Id. at 69:1-70:16. Neither Stone nor Holguin were terminated following their respective alleged incidents.

16

It appears undisputed that Crowley, Stone, and Holguin were generally subject to the same standards of conduct that were laid out in Billboard's employee conduct handbook. See ECF No. 74-1 at D000005-6 (the "Handbook"). However, the conduct that the plaintiff engaged in is different in kind from the conduct that Stone and Holguin were accused of. Stone's and Holguin's alleged conduct involved harassment of other Billboard employees in the workplace. Neither Stone nor Holguin had editorial discretion over artists or engaged in conduct that involved a perceived or actual breach of journalistic ethics. By contrast, the plaintiff sent lewd messages to an artist whom the plaintiff was covering for Billboard and the plaintiff's conduct generated multiple waves of negative press coverage of Billboard. There is also no genuine dispute that the plaintiff's conduct ran afoul of established ethical and professional standards in the journalism industry. See 56.1 Reply ¶¶ 73-75. In view of the relative seriousness of the plaintiff's conduct and the fact that this conduct breached relevant professional and ethical norms, Holguin and Stone are not similarly situated to the plaintiff and the evidence in the record concerning their conduct and treatment by Billboard cannot not create an inference of discrimination.[5]

---

[5] In a prior order denying the plaintiff's motion to compel discovery concerning Holguin and Stone, Magistrate Judge Netburn likewise concluded

Additionally, it is undisputed that Warner, Capra, and Karp did not make made any discriminatory statements about the plaintiff's sexual orientation in connection with the plaintiff's termination or at any point that he was employed by the defendants. 56.1 Reply ¶¶ 11, 78, 132; see Lizardo, 270 F.3d at 104 (finding no inference of race discrimination where "[n]o comment or statement made by the defendants had any racial content or overtone"). It is further undisputed that Brown did not make any comments about the plaintiff's sexual orientation at the time of the plaintiff's termination. 56.1 Reply ¶ 78. However, the plaintiff testified that Brown allegedly told the plaintiff in the Fall of 2018 that Brown believed that gay men are more inclined to be fans of female artists, even if those artists are not themselves LGBT. Id. The plaintiff argues that this comment constituted a stereotyped remark against gay men and raises an inference of discrimination in his termination. MRC contends that the comment was, at most, a stray remark that should be disregarded and cannot support an inference of discriminatory animus.

In determining whether a remark is simply a stray remark—in which case, in the absence of other indicia of discrimination, there is no inference of discrimination—courts consider: "(1)

that the plaintiff had not "established that these are the appropriate comparators." ECF No. 83 at 19:7-11.

who made the remark (i.e., a decisionmaker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process." Lenzi v. Systemax, Inc., 944 F.3d 97, 112 (2d Cir. 2019); see also Milord-Francois v. N.Y. State Office of Medicaid Inspector Gen., No. 19-cv-179, 2020 WL 5659438, at *14 (S.D.N.Y. Sept. 23, 2020). Stray remarks "by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." Milord-Francois, 2020 WL 5659438, at *14.

Brown's alleged remark is a classic stray remark that cannot support an inference of discrimination. It is undisputed that Brown was among the decision-makers who promoted the plaintiff in February 2019 and terminated the plaintiff in March 2019. The fact that the plaintiff was promoted with Brown's input after Brown made the alleged remark in the Fall of 2018 undercuts the plaintiff's argument that the alleged remark evidences Brown's discriminatory animus.

Moreover, the alleged remark was temporally remote from the plaintiff's termination and was made outside the context of any discussion regarding the plaintiff's employment. Therefore, the

19

alleged remark does not raise an inference that the plaintiff's termination was motivated in any part by discriminatory animus. See Buckman v. Calyon Sec. (USA) Inc., 817 F. Supp. 2d 322, 335-36 (S.D.N.Y. 2011) (disregarding a remark made by a plaintiff's supervisor five months before the plaintiff was terminated; explaining that while "a reasonable juror could find that the remark itself was discriminatory, it was too remote in time and context to support a reasonable inference that [the plaintiff's] discharge was a result of race discrimination."); see also Almonord v. Kingsbrook Jewish Med. Ctr., No. 04-cv-4071, 2007 WL 2324961, at *9 (E.D.N.Y. Aug. 10, 2007) ("In the absence of a clearly demonstrated nexus to an adverse employment action, stray workplace remarks are insufficient to defeat a summary judgment motion.").

The plaintiff also argues that alleged procedural irregularities surrounding his termination raise an inference of discrimination. The plaintiff points to the Handbook, which contains sexual harassment policies that govern "any interaction between our employees that affects employees in their work" and provides that "[e]very report of perceived harassment will be fully and promptly investigated." Handbook at D000005-6. The plaintiff contends that the defendants failed to "fully" investigate the plaintiff's alleged harassment of NEO 10Y and instead hastily terminated the plaintiff.

The plaintiff's argument is without merit for three reasons. First, it is not clear that the policies relied upon by the plaintiff are relevant in this case. The relevant sexual harassment policies govern "interaction[s] <u>between employees</u>," not interactions between employees and third parties, such as those between NEO 10Y and the plaintiff. This interpretation of the policies is consistent with Goldsmith's and Capra's testimony that the plaintiff was not terminated because he violated the Handbook's sexual harassment policies. Goldsmith Tr. 18:3-19:9; Capra Tr. 56:21-24, 61:4-16.

Second, there is no evidence that the policies were violated. The Handbook does not require that particular investigatory steps be taken or specify what constitutes a "full" investigation. Here, it is undisputed that before the plaintiff was terminated, Capra and Brown reviewed the plaintiff's communications with NEO 10Y and Capra met with the plaintiff to discuss the communications. The plaintiff points to no evidence to support the contention that the investigation conducted prior to his termination was defective or otherwise violative of the policies.

Third, whatever the shortcomings of the investigation, they do not support an inference of discrimination in this case. <u>See, e.g.</u>, <u>Desir v. Bd. of Co-op. Educ. Servs.</u>, 803 F. Supp. 2d 168, 177 (E.D.N.Y. 2011), <u>aff'd</u>, 469 F. App'x 66 (2d Cir. 2012)

(although "procedural irregularities may form a basis to infer
discriminatory animus or pretext . . . departures from
established procedure do not show, without more, than an
employer was animated by [unlawful] discrimination."); Kirnon-
Emas v. Am. Mgmt. Ass'n, No. 00-cv-3960, 2002 WL 523368, at *6
(S.D.N.Y. Apr. 5, 2002) ("[E]ven accepting all of the
plaintiffs' allegations, all that they amount to are allegations
of a shoddy investigation. They do not undercut the undisputed
facts of an allegation of improper activity by the plaintiffs in
the office, a prompt investigation, and an immediate
termination").

In sum, the plaintiff is unable to make out a prima facie
case of discrimination given the undisputed evidence in the
record. Moreover, there is no evidence that supports an
inference that discrimination was a motivating factor or played
any role in the defendants' decision to terminate the plaintiff.
Therefore, the plaintiff's NYSHRL, NYCHRL, and Title VII claims
fail.

**2.**

Moreover, the undisputed evidence demonstrates that there
were legitimate, non-discriminatory reasons for the plaintiff's
termination. "[U]nprofessional conduct is a legitimate, non-
discriminatory reason for terminating an employee." Edwards v.
City of New York, No. 03-cv-9407, 2005 WL 3466009, at *15

(S.D.N.Y. Dec. 19, 2005); see also Hengjun Chao v. Mount Sinai Hosp., No. 10-cv-2869, 2011 WL 1097535, at *6 (S.D.N.Y. Mar. 22, 2011) (granting summary judgment dismissing a discrimination claim advanced by a plaintiff who had "committed research misconduct and violated professional or ethical standards"); Lessey v. Broadway Elec., No. 08-cv-3884, 2009 WL 3755471, at *5 (S.D.N.Y. Nov. 2, 2009).

The plaintiff admits that he sent sexually charged messages to an artist whom he was covering for Billboard and over whom he had editorial discretion. Brown, Capra, and Goldsmith testified that this conduct was unethical, inappropriate, and violative of standard practices in the journalism industry. 56.1 Reply ¶¶ 73-75. There does not appear to be any evidence in the record that that contradicts this testimony. Instead, the plaintiff argues that the defendants' termination of him was not justified because Billboard witnesses were unable to identify written Billboard policies that specifically proscribed the plaintiff's conduct.

The plaintiff's argument fails. The plaintiff has not cited any authority that requires an employer to delineate, in a written policy, every possible activity that could lead to an employee's termination. Here, the undisputed evidence demonstrates that that the plaintiff's conduct violated established industry norms, ethics, and standards of

professionalism. This is a sufficient showing that the defendants had legitimate, non-discriminatory reasons for the plaintiff's termination.

Additionally, any argument that the proffered reasons for the plaintiff's termination are pretextual is without merit. The burden of establishing pretext is higher than the burden required to establish a prima facie case. Lessey, 2009 WL 3755471, at *6 (citing Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985)). An employer is entitled to summary judgment unless the plaintiff has produced "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Holmes v. Astor Servs. for Children & Families, No. 16-cv-2260, 2017 WL 3535296, at *4 (S.D.N.Y. Aug. 16, 2017). For the same reasons that the plaintiff failed to make out a prima facie case, the plaintiff cannot satisfy this burden.

The plaintiff has failed to establish a prima facie case of discrimination or show that he was treated less well in any way because he is gay. Moreover, the undisputed evidence establishes that the defendants had legitimate, non-discriminatory, and non-pretextual reasons to terminate the plaintiff. Accordingly, MRC's motion for summary judgment dismissing the plaintiff's NYSHRL, NYCHRL, and Title VII claims is **granted**.

**C.**

The plaintiff contends that the Statement to BuzzFeed, the March 21 Statement, and the Letter from the Editor were each defamatory.[6]

To prevail on a claim of defamation under New York law, the plaintiff must establish (1) a written defamatory statement of and concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability. Ganske v. Mensch, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020) (quoting Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019)).

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." Mann v. Abel, 885 N.E.2d 884, 885-86 (N.Y. 2008). To distinguish a statement of fact from an opinion, courts consider the following factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood;
> (2) whether the statements are capable of being proven true or false;

---

[6] MRC also moves for summary judgment dismissing the plaintiff's defamation claims arising from the defendants' March 19, 2019 statement to Gay Star News and a March 26, 2019 statement that Billboard posted on its website. The plaintiff did not address these statements in his brief in opposition to MRC's motion for summary judgment. Accordingly, summary judgment dismissing any defamation claims arising from the March 19, 2019 and March 26, 2019 statements is **granted**. See, e.g., Johnston v. Town of Orangetown, No. 10-cv-8763, 2013 WL 1189483, at *7 n. 3 (S.D.N.Y. Mar. 22, 2013), aff'd, 562 F. App'x 39 (2d Cir. 2014) ("Defendants moved for summary judgment on said claims . . . Plaintiff failed to respond to defendants' arguments and, thus, apparently concedes defendants' points and waives said claims.").

(3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

Ganske, 480 F. Supp. 3d at 551-52. The determination of whether a statement is an allegation of fact or an opinion is a question of law. Chau v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014).

Additionally, statements that are substantially true cannot be defamatory. Tucker v. Wyckoff Heights Med. Ctr., 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014); see also Printers II, Inc. v. Prof'l Pub., Inc., 784 F.2d 141, 146 (2d Cir. 1986) ("It is only necessary that the gist or substance of the challenged statements be true" to render them non-defamatory). The question of whether a statement is substantially true may be resolved on a motion for summary judgment. See, e.g., Hosseinzadeh v. Klein, 276 F. Supp. 3d 34, 47-48 (S.D.N.Y. 2017).

**1.**

The plaintiff contends that the following excerpt from the Statement to BuzzFeed is defamatory:

Like any responsible news organization, Billboard regards the idea of blacklisting as repugnant. It never has and never would blacklist anyone. We thank you for bringing this issue to our attention and we regret the unprofessional behavior, which does not reflect our company's standards.

The plaintiff argues that this statement constitutes a false accusation by the defendants that the plaintiff engaged in

blacklisting. MRC contends that the plaintiff's proposed interpretation of the statement is erroneous and that the statement, properly understood, is true.

When considering an allegedly defamatory statement, courts must give any "disputed language a fair reading in the context of the publication as a whole." Celle v. Filipino Reporter Enter. Inc., 209 F.3d 163, 177 (2d Cir. 2000) (quoting Armstrong v. Simon & Schuster, Inc., 649 N.E.2d 825, 829 (N.Y. 1995)). "Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing." Id.; see also Steinhilber v. Alphonse, 501 N.E.2d 550, 553 (N.Y. 1986).

The plaintiff's proposed reading of the Statement to BuzzFeed is not a fair interpretation of the statement read in the context of the BuzzFeed Article as a whole. The BuzzFeed Article discusses two allegations: (1) that the plaintiff sexually harassed NEO 10Y through the plaintiff's Instagram messages; and (2) that the plaintiff blacklisted NEO 10Y while at Billboard. In response to the allegation that the plaintiff blacklisted NEO 10Y while at Billboard, the Statement to BuzzFeed expressly says that Billboard "never has and never would blacklist anyone." The statement that Billboard "never has" blacklisted anyone necessarily indicates that the plaintiff did not blacklist NEO 10Y while the plaintiff was still working

27

at and acting on behalf of Billboard. Because the parties agree that Billboard has in fact never blacklisted anybody, this portion of the Statement to BuzzFeed, properly interpreted, is true and cannot support a claim for defamation.

The plaintiff also argues that the portion of the Statement to BuzzFeed in which the defendants expressed "regret" about the plaintiff's "unprofessional behavior" and explained that such behavior "does not reflect our company's standards" was defamatory. However, it is undisputed that the plaintiff's conduct violated professional and ethical industry norms to which Billboard adheres. See, e.g., 56.1 Reply ¶¶ 73-75. These statements are therefore true and cannot be defamatory. Additionally, the statement that the plaintiff's behavior was "unprofessional" is an opinion and non-actionable. See Tasso v. Platinum Guild Int'l, No. 94-cv-8288, 1998 WL 841489, at *5 (S.D.N.Y. Dec. 3, 1998) (concluding that statements that the plaintiff was "unethical, untrustworthy," "unprofessional," and "incompetent" were "non-actionable statements of opinion").

Accordingly, MRC's motion for summary judgment dismissing the plaintiff's claim of defamation based on the Statement to BuzzFeed is **granted.**

## 2.

The plaintiff contends that the following excerpt from the March 21 Statement is defamatory:

28

> We want to reiterate that the kind of behavior described
> is not only deplorable but also completely contrary to
> our ethical and professional standards . . . Billboard
> expects all its journalists and employees to uphold the
> highest standards of professional and ethical behavior,
> and we will not tolerate anything less.

The March 21 Statement cannot give rise to a claim for

defamation. The statement that the plaintiff's behavior was

"deplorable" is an expression of opinion, not fact. <u>See</u> <u>Tasso</u>

1998 WL 841489, at *5; <u>see also</u> <u>Chau</u>, 771 F.3d at 128 ("New York

law protects derogatory statements which may be characterized as

'opinion' as opposed to 'fact.'"). Moreover, as discussed above

with respect to the Statement to BuzzFeed, the contention that

the plaintiff's conduct violated Billboard's standards of

professional and ethical conduct is true, and any argument to

the contrary is unsupported by the record evidence.

Accordingly, MRC's motion for summary judgment dismissing

the plaintiff's claim of defamation based on the March 21

Statement is **granted.**

**3.**

The plaintiff contends that the following excerpt from the

Letter from the Editor is defamatory:

> [O]ne of our editors had violated our professional
> standards by sending inappropriate messages to an
> artist.

The plaintiff's argument fails for largely the same reasons

discussed above and because the plaintiff has failed to identify

29

any part of the statement that is false. Furthermore, the statement that the plaintiff's messages were "inappropriate" is a non-actionable opinion. See, e.g., Hollander v. Cayton, 536 N.Y.S.2d 790, 791 (App. Div. 1988) (statements labeling the plaintiff as "immoral" and "unethical" were opinions).

Accordingly, MRC's motion for summary judgment dismissing the plaintiff's claim of defamation based on the Letter from the Editor is **granted.**

### D.

The plaintiff initiated this action on August 13, 2019. The plaintiff then filed his first amended complaint on November 12, 2019 and his second amended complaint on August 3, 2020. Each of the plaintiff's complaints named both MRC (or its predecessor company) and Billboard as defendants. In the Second Amended Complaint, the plaintiff advanced identical claims against both parties based on the same legal theories and factual allegations.

The plaintiff filed a waiver of service as to MRC's predecessor on September 12, 2019. See ECF No. 7. However, to date, no waiver of service or affidavit of service has been filed as to Billboard. Additionally, no counsel has appeared in this action on behalf of Billboard. MRC moved for summary judgment on its own behalf and did not contend in its motion that the claims against Billboard should be dismissed.

"District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances." Jian Yang Lin v. Shanghai City Corp., 950 F.3d 46, 49 (2d Cir. 2020); see also Fed. R. Civ. P. 56(f)(1). When doing so, courts must take care to "determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." Jian Yang Lin, 950 F.3d at 49.

The claims against Billboard should be sua sponte dismissed. The plaintiff advanced the same exact claims against both MRC and Billboard and had a full and fair opportunity to defend the claims on the merits in opposing MRC's motion for summary judgment. Indeed, it appears that the plaintiff understood that he was defending against a motion for summary judgment filed on behalf of both MRC and Billboard. See e.g., Opp'n at 10 (discussing the arguments advanced by the "Defendants" in "their summary judgment motion"); 25 (arguing that the "Defendants' motion for summary judgment must be denied") (emphases added). Because the plaintiff advanced the same claims against MRC and Billboard, the claims against

31

Billboard are without merit for the same reasons discussed above.[7]

Accordingly, summary judgment dismissing all of the plaintiff's claims against Billboard is <u>sua sponte</u> **granted.**

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the foregoing reasons, MRC's motion for summary judgment is **granted.** Additionally, summary judgment dismissing all of the plaintiff's claims against Billboard is <u>sua sponte</u> **granted.**

The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **December 21, 2021**

                                        **John G. Koeltl**
                                **United States District Judge**

---

[7] MRC advises that Billboard is not in fact a suable entity but only a trade name for a publication distributed by MRC. ECF No. 37 at 1 n.1.